UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDERSON COUTINHO-SILVA, | : | CIVIL NO: 3:17-CV-00378 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| USP LEWISBURG FOOD DIRECTOR | : | (Chief Magistrate Judge Schwab) |
| MR. RAMIREZ, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff, Anderson Coutinho-Silva ("Coutinho-Silva"), a federal prisoner proceeding *pro se*, claims that the Food Services at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg") served him and other inmates contaminated food, which caused him to have severe symptoms and then fall ill. The defendant moves to dismiss the complaint on the grounds that Coutinho-Silva failed to exhaust administrative remedies and failed to allege the defendant's personal involvement as required to state a *Bivens* claim. Because it is not clear from the face of the complaint that Coutinho-Silva failed to exhaust administrative remedies, the complaint cannot be dismissed on exhaustion grounds. Nevertheless, Coutinho-Silva does not allege the defendant's personal involvement in this incident, and, thus, we recommend that the Court grant the defendant's

motion to dismiss. We also recommend that the Court grant Coutinho-Silva leave to file an amended complaint.

## II. Background and Procedural History.

Coutinho-Silva is an inmate at the USP Lewisburg. *Doc. 1* at 1. Coutinho-Silva alleges that on November 22, 2016, he suffered from diarrhea, heart burn, and vomiting after consuming old and improperly cooked food supplied by the "food services" at USP Lewisburg. *Id*. at 3. Coutinho-Silva alleges that "the whole USP Lewisburg population staff and inmates" knew about this incident. *Id*. Coutinho-Silva claims that he went through "excruciating pain for about 9 days due to [his] illness," and he requests the "food services director be held accountable and compensate" him for his "suffering in the amount of $15,000.00." *Id*. at 5.

Coutinho-Silva attached to his complaint a number of documents relating to his administrative remedies, including two "Informal Resolution Attempts," responses to those Attempts, one "Request for Administrative Remedy," a response to that Request, and two eyeglass examination forms. In his "Informal Resolution Attempt" dated December 13, 2016, Coutinho-Silva claimed that he became sick after eating old food on November 22, that "[t]he kitchen services is still serving old food," and he requested that they stop that. *Id*. 14. The next day, a

staff member replied and admitted that "several inmates at USP Lewisburg have reported symptoms related to gastrointestinal disturbances," and advised Coutinho-Silva to report his medical concerns through daily sick call. *Id*. at 15.

On December 15, 2016, Coutinho-Silva filed a "Request for Administrative Remedy" with the Identification Number 886409-F1, which was received on December 20, 2016. *Id*. at 16-17. In his Request, Coutinho-Silva alleged that the Food Services served old food to the inmates, and he was not satisfied with the answer given to his complaint about this matter. *Id*. at 16. Coutinho-Silva further stated that the medical staff failed to provide him with medication following his sick call, and he would bring this matter to the Food Services Officer's attention by "going to the next step." *Id*. In his response dated December 28, 2016, Warden David J. Ebbert stated that several inmates at USP Lewisburg had reported symptoms related to gastrointestinal disturbances, and all reporting inmates were assessed and received appropriate treatment. *Id*. at 18. The Warden also assured Coutinho-Silva of the Food Service's commitment to food safety in prison and its adherence to standard procedures, and the Warden reminded him that he may appeal to the Regional Director's office within twenty days if he was dissatisfied. *Id*.

On January 4, 2017, Coutinho-Silva submitted another "Informal Resolution Attempt," alleging that he had several serious symptoms and that his "complaint

was not properly followed up." *Id*. at 19. A staff member replied that there was no evidence that Coutinho-Silva recently requested to be evaluated by Health Services staff for any medical concerns except for an encounter regarding an eyeglass exam on December 16, 2016. *Id*. at 20-21.

On January 23, 2017, Coutinho-Silva commenced this action by filing a *pro se* complaint in the United States District Court for the Eastern District of Pennsylvania. The Eastern District Court transferred the case to this Court. On May 12, 2017, the defendant filed a motion to dismiss the complaint and a brief in support of that motion. We ordered Coutinho-Silva to file a brief in opposition to that motion on or before May 30, 2017. *Doc. 14*. Coutinho-Silva, however, failed to timely file the required brief, and we ordered him to show cause why that motion should not be granted unopposed and why this action should not be dismissed for his failure to prosecute under Fed.R.Civ.P. 41(b). *Doc. 16*. Coutinho-Silva filed a letter as the brief in opposition to the motion on July 11, 2017. *Doc. 19*.

## III. Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6),[1] the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the

---

[1] Although the defendant states that he "moves this Court to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)" (*doc. 12* at 1), and cites Rule 12(b)(1) and Rule 12(b)(6) as the legal bases for his motion (*doc. 13* at 5), he makes no follow-up argument concerning subject-matter jurisdiction under Rule 12(b)(1). The defendant argues that Coutinho-Silva failed to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA). The failure to exhaust administrative remedies under the PLRA, 42 U.S.C. §1997e(a), however, does not deprive federal courts of subject-matter jurisdiction. *Nyhuis v. Reno*, 204 F.3d 65, 69 n.4 (3d Cir. 2000) (internal citations omitted). Therefore, we only address the defendant's Rule 12(b)(6) arguments here.

claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id*.

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed

right to relief beyond the level of mere speculation, which should be set forth in a "short and plain" statement of a cause of action.

## V. Discussion.

### A. It Is Not Clear from the Face of the Complaint that Coutinho-Silva Failed to Exhaust Administrative Remedies Prior to Filing this Lawsuit.

### 1. The Exhaustion Requirement.

The defendant contends that the Court should dismiss the complaint because Coutinho-Silva failed to exhaust available administrative remedies. The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust available administrative remedies prior to filing an action challenging prison conditions. The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.* Thus, the benefits of the exhaustion requirement "include allowing a prison to address complaints about the

program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219.

In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 739 (2001), and the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis*, 204 F.3d at 75. "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77.

42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo,* 548 U.S. 81 (2006). In other words, it requires more than simple exhaustion, i.e., more than that there is no further process available to the prisoner within the grievance system. *Spruill v. Gillis*, 372 F.3d 218, 227-31 (3d Cir. 2004). Section 1997e(a) requires that a prisoner follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id.* at 231. The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper. *Id. See also Jones,* 549 U.S. at 218 ("The level of detail necessary in a

grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

"The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016) (quoting § 1997e(a)).  In other words, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 1858.  "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' " *Id*. (quoting *Booth*, 532 U.S. at 737-738 (internal citations and quotation marks omitted)).  "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1858–59.

The Supreme Court has noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id*. at 1859.  "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," such as when "a prison handbook directs inmates to

submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions." *Id.*

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* "In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.* "But when a remedy is . . . essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id.; see also Small v. Camden Cty,* 728 F.3d 265, 271 (3d Cir. 2013) ("Remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes.").

Third, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860 n.3 (citing *Davis v. Hernandez,* 798 F.3d 290, 295 (5th Cir. 2015) ("Grievance procedures are unavailable . . . if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process" (emphasis deleted); *Schultz v. Pugh,* 728 F.3d 619, 620 (7th Cir. 2013) ("A remedy is not available, therefore, to a prisoner prevented by threats

or other intimidation by prison personnel from seeking an administrative remedy");

*Pavey v. Conley,* 663 F.3d 899, 906 (7th Cir. 2011) ("[I]f prison officials misled [a

prisoner] into thinking that . . . he had done all he needed to initiate the grievance

process," then "[a]n administrative remedy is not 'available'"); *Tuckel v. Grover,*

660 F.3d 1249, 1252–1253 (10th Cir. 2011) ("[W]hen a prison official inhibits an

inmate from utilizing an administrative process through threats or intimidation, that

process can no longer be said to be 'available'"); *Goebert v. Lee County,* 510 F.3d

1312, 1323 (11th Cir. 2007) (If a prison "play[s] hide-and-seek with administrative

remedies," then they are not "available")); *see also Robinson v. Superintendent*

*Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that administrative

remedies were unavailable to the prisoner when the prison failed to timely respond

to the prisoner's "grievance and then repeatedly ignored his follow-up requests for

a decision on his claim").

"Under the PLRA, exhaustion is a precondition for bringing suit under

§ 1983." *Small*, 728 F.3d at 269. It is a "'threshold issue that *courts* must address

to determine whether litigation is being conducted in the right forum at the right

time.'" *Id.* at 270 (emphasis in original) (quoting *Dillon v. Rogers*, 596 F.3d 260,

272 (5th Cir. 2010)). There is no right to have a jury decide the issue of

exhaustion. *Id.* at 271. Rather, "exhaustion is a question of law to be determined

by a judge, even if that determination requires the resolution of disputed facts." *Id*.

at 269.

### 2. Failure to Exhaust Raised in a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss.

Failure to exhaust available administrative remedies is an affirmative

defense. *Jones,* 549 U.S. at 216. As such, the defendant has the burden of pleading

and proving that the prisoner failed to exhaust available administrative remedies.

*Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

A court can dismiss a complaint under Fed.R.Civ.P. 12(b)(6) based on an

affirmative defense if it is clear from the face of the complaint that the complaint is

barred by the affirmative defense. For example, the United States Court of

Appeals for the Third Circuit has long held that a court can dismiss a complaint

based on the statute of limitations, which is an affirmative defense, when "the

complaint facially shows noncompliance with the limitations period and the

affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin,*

*Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir.1994). But "'[i]f the

bar is not apparent on the face of the complaint, then it may not afford the basis for

a dismissal of the complaint under Rule 12(b)(6)." *Schmidt v. Skolas,* 770 F.3d

241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir.

2002) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir.

1978)).  And "a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt*, 770 F.3d at 251.  "Thus, if 'the pleading does not reveal when the limitations period began to run,' then 'the statute of limitations cannot justify Rule 12 dismissal.'" *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (quoting *Barefoot Architect, Inc. v. Bunge,* 632 F.3d 822, 835 (3d Cir. 2011)).

Like the statute of limitations, the failure to exhaust available administrative remedies is an affirmative defense. *McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010) ("Failure to exhaust and the statute of limitations are similar 'in the abstract': they are both affirmative defenses.").  And as with the statute of limitations, dismissal under Fed.R.Civ.P. 12(b)(6) based on the failure to exhaust is appropriate only if it is apparent from the complaint that the plaintiff failed to exhaust available administrative remedies. *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014) ("While the failure to exhaust administrative remedies may form a basis for a dismissal for failure to state a claim, dismissal on that ground is appropriate only in those circumstances where the complaint reveals the exhaustion defense on its face."); *Jones,* 549 U.S. at 215-216 (holding that a prisoner's failure to exhaust available administrative remedies is an affirmative defense, but noting that "that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim" and that "[w]hether a particular ground

for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract"). Because a Rule 12(b)(6) motion raising failure to exhaust is appropriate only in cases where the complaint shows that the prisoner has failed to exhaust available administrative remedies and the prisoner is not required to plead or prove exhaustion, cases in which the failure to exhaust is appropriately raised on a motion to dismiss will be rare. *See Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (concluding that "in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim"); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (stating that "only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse"); *Cf. Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 n.5 (3d Cir. 2015) (noting in a case under the Employee Retirement Income Security Act of 1974 that "[b]ecause the exhaustion defense often requires consideration of materials outside the pleadings and is thus typically resolved on summary judgment, . . . it is not generally the basis for dismissal under Rule 12(b)(6)").

**3. It Is Not Clear from the Face of the Complaint that Coutinho-Silva Failed to Exhaust Available Administrative Remedies.**

Before we address the allegations in the complaint regarding exhaustion of administrative remedies, however, we address what documents, if any, outside the pleadings we may consider in connection with the Defendant's motion to dismiss.

In addition to considering the allegations of the amended complaint, in connection with a 12(b)(6) motion, the court may consider "'exhibits attached to the complaint and matters of public record.'" *Schmidt*, 770 F.3d at 249 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993)). Here, Coutinho-Silva attached to his complaint a number of documents that reflect actions he had taken in order to seek administrative remedies. We will consider these documents in deciding the pending motion to dismiss.

"Further, courts may consider [an] exhibit[] attached to a defendant's motion to dismiss if it is 'an undisputedly authentic document' and 'plaintiff's claims are based on the document.'" *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (quoting *Pension Benefit Guar. Corp.,* 998 F.2d at 1196). In other words, the court may consider "document[s] *integral to or explicitly relied* upon in the complaint" in connection with a 12(b)(6) motion. *Schmidt*, 770 F.3d at 249 (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997)) "The rationale underlying this exception [to the

rule that only the complaint may be considered in connection with a 12(b)(6) motion to dismiss] is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *Id.* at 249 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426) (quoting in turn *Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993)). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.*

Here, in support of his argument that Coutinho-Silva failed to exhaust available administrative remedies, the defendant attached to his motion the following exhibits: Declaration of Jennifer Knepper (the "declaration") (*doc. 13-1* at 3-4), Inmate Data as of 03-24-2017 ("Inmate Data") (*id.* at 5-8), and Coutinho-Silva's SENTRY computer generated Administrative Remedies Generalized Retrieval as of 03-24-2017 ("SENTRY records") (*id.* at 9-36). According to SENTRY records, on January 9, 2017, Coutinho-Silva appealed a decision regarding "gastrointestinal ill due to food" to the Northeast Regional Office by filing Administrative Remedy with the Identification Number 886406-R1. *Doc. 13-1* at 36. On February 7, 2017, the Northeast Regional Office denied Coutinho-Silva's appeal. *Id.* On March 1, 2017, Coutinho-Silva appealed the Regional

Office's denial to the Central Office by filing Administrative Remedy with the Identification Number 886409-A1, and the response due date for Coutinho-Silva's appeal was April 30, 2017. *Id*.

Attorneys for prison officials often contend that claims should be dismissed under Fed.R.Civ.P. 12(b)(6) because the prisoner failed to exhaust administrative remedies. "These attorneys often cite to *Spruill v. Gillis,* 372 F.3d 218 (3d Cir. 2004), for the proposition that grievance records are considered 'indisputably authentic documents' that a court may consider in [connection with a] motion to dismiss without converting the motion into one for summary judgment." *Cooper v. Martucchi*, No. CIV.A. 15-267, 2015 WL 4773450, at *2 (W.D. Pa. Aug. 12, 2015) (footnote omitted).[2] In *Spruill*, 372 F.3d at 228, in connection with a motion to dismiss, the Third Circuit considered grievance documents submitted by the parties without converting the motion into a motion for summary judgment. *Id*.[3] It

_____

[2] In the instant case, although the defendant submitted these documents in support of his motion to dismiss, he does not attempt to show how or why this Court should consider the documents attached to the motion to dismiss as indisputably authentic documents.

[3] Although the Third Circuit opinion is not clear in this regard, Judge Vanaskie, the district judge in *Spruill* and the then Chief Judge of this court, noted in his decision on the motion to dismiss, that the defendants attached copies of Spruill's grievances and appeal documents to their motion to dismiss and that Spruill also attached copies of the responses to his grievances to his brief in opposition to the motion to dismiss. *Spruill v. Gillis*, Civil No. 3:CV-01-1625 (M.D. Pa.) (Vanaskie, C.J.) at *Doc. 43* at 8 n.5. Judge Vanaskie also noted that "[b]ecause Spruill himself refers to the grievances in his complaint to show exhaustion, it is proper for me to

did so in the context of deciding whether Spruill procedurally defaulted his claims by failing to seek money damages in his grievances and whether he procedurally defaulted his claim against one defendant by failing to name that defendant in the grievances. *Id*. at 232-235. The court stated that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment." *Id*. at 223.

As Magistrate Judge Lenihan has observed, in *Spruill* the district court considered the grievance documents attached as exhibits to the defendants' motion to dismiss, without converting the motion to a motion for summary judgment, because Spruill referenced such grievances in his complaint to show exhaustion. *Cooper*, 2015 WL 4773450 at *2. "Although both the district court and the Third Circuit's opinions in *Spruill* seem to suggest that an inmate's actual grievance records are 'indisputably authentic documents,' the Third Circuit has yet to hold, in a published or unpublished opinion, that a district court may consider these documents in support of a defendant's motion to dismiss in a situation other than that presented in *Spruill*, where the plaintiff references the grievances in his complaint to show exhaustion." *Id.* "It is also worth noting that the exhibits attached to the defendants' motion to dismiss in *Spruill* did not include any

consider the documents without the necessity to convert the motion into a motion for summary judgment." *Id*.

affidavits or declarations by prison officials attesting to the plaintiff's failure to exhaust, which are often attached to motions to dismiss submitted in this Court, and the Third Circuit has specifically said that '[r]eliance on declarations from prison officials or Corrections Department administrators requires conversion.' " *Id*. at *3 (quoting *Berry v. Klem*, 283 F. App'x 1, 3 (3d Cir. 2008)).  And in *Berry*, "[t]he Third Circuit also stated that '[e]ven if the grievances, appeals, and responses are indisputably authentic . . . the declarations are evidentiary materials that cannot be considered on a motion to dismiss.'" *Id*. at *3 (quoting *Berry*, 283 F. App'x at 4).

Here, we are not convinced that Coutinho-Silva's "old food" claim is based on the grievance documents submitted by the defendant.  Accordingly, such documents cannot be considered in connection with the defendant's 12(b)(6) motion.  Further, the declaration submitted by the defendant is not an indisputably authentic document on which Coutinho-Silva's claim is based.  Thus, it cannot be considered in deciding a 12(b)(6) motion to dismiss. *Berry*, 283 F. App'x at 4; *see also Schmidt*, 770 F.3d at 249 ("The defendants in this case attached several different kinds of documents to their motions to dismiss.  Some, like the affidavits attached by the Dipexium defendants, clearly may not be considered at this stage."); *Breeland v. Baker*, 439 F. App'x 93, 94–95 (3d Cir. 2011) (stating that the "District Court properly recognized that, in order to consider [the grievance

coordinator]'s verification [stating that the prisoner had failed to exhaust administrative remedies] along with the other grievance-related documents, the court would have to convert [defendant]'s Rule 12(b)(6) motion into one for summary judgment"); *Gonzalez v. Wentzel*, No. 3:CV-15-184, 2016 WL 727178, at *3–4 (M.D. Pa. Feb. 18, 2016) (Conaboy, J.) ("As recognized in *Berry*, the supporting declaration of Shambaugh submitted by the Commonwealth Defendant is clearly a matter outside of the Complaint and as such is not properly submitted in support of a motion to dismiss.") (footnote omitted); *but see Hampton v. Wetzel,* No. 1:15-CV-898, 2016 WL 1089028, at *5 & *5 n. 2 (M.D. Pa. Mar. 21, 2016) (Conner, C.J.) (considering declaration of a grievance officer in the Secretary's Office of Grievances and Appeals as well as grievance documents on a motion to dismiss without converting the motion to a summary judgment motion).

In sum, we cannot consider the declaration or the SENTRY records submitted by the defendant in connection with his motion to dismiss. Nevertheless, we must determine whether it is clear from the face of the complaint that Coutinho-Silva failed to exhaust available administrative remedies. In his complaint, Coutinho-Silva asserts that he filed a grievance with his "counselor, medical staff and warden" regarding his "sickness" at USP Lewisburg where the incident occurred, but he received no result. *Doc. 1* at 4. Coutinho-Silva also asserts that "I [sent a copy] out to medical [staff, but I] was denied a check up [and

I] expressed my concerns to my counselor about my sickness and filed a BPS." *Id.*

Along with his complaint, Coutinho-Silva filed two "Informal Resolution

Attempts" respectively dated "12/13/16" (*Id*. at 14) and "1/4/17" (*Id*. at 19) and

one "Request for Administrative Remedy" to "Warden or Regional Officer" (*Id*. at

16). In his first Attempt, Coutinho-Silva alleged that he "wrote a cop-out to food

serves [sic]" to complain about the "old food" he was served, and that he "was sick

for 8 to 9 days" before feeling better, and he was denied medication even though

he so requested. *Id*. at 14. At the end of this Attempt, Coutinho-Silva requested

that the staff member ask the food services officer to stop providing old food to the

inmates. *Id*. In his second Attempt, Coutinho-Silva alleged that his "complaint was

not properly followed up" since he "was [neither] checked [up] nor was [his sick-

call] request placed in [his] medical file." *Id*. at 19. In his Request, Coutinho-Silva

alleged that he "was not satisfied with the answer they gave [him] on the BPS,"

and "they didn't give [him] medication," and he stated that he would proceed to the

next administrative step and bring the matter to the attention of the "food services

officer" so that old food would not be served. *Id*. at 16. The medical records

Coutinho-Silva filed along with his complaint reflect nothing but his eyeglass

examination approval dated "12/19/2016" and his eyeglass examination form dated

"12/02/2015." *Id*. at 22.

While Coutinho-Silva's complaint does not show that he exhausted available administrative remedies, we cannot say definitively that it is clear from the face of the complaint that he failed to exhaust administrative remedies. All we can say is that in response to questions on the complaint form,[4] Coutinho-Silva filed two "Informal Resolution Attempt" forms respectively on December 13, 2016 and January 4, 2017, and one "Request for Administrative Remedy" on December 15, 2016. Coutinho-Silva, however, does not allege whether he appealed this matter to the Central Office. Thus, we cannot say that the complaint fails to state a claim upon which relief can be granted based on Coutinho-Silva's failure to exhaust administrative remedies.

### B. Coutinho-Silva Fails to Specify Defendant Ramirez's Personal Involvement in the Incident at Issue.

The defendant further contends that the complaint fails to state a claim against him upon which relief can be granted because Coutinho-Silva has not alleged sufficient personal involvement on his part, and he cannot be liable on the basis of respondeat superior.

Liability in a *Bivens* action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. In other

---

[4] Coutinho-Silva used the complaint form from the United States District Court for the Eastern District of Pennsylvania.

words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes,* 135 S.Ct. 2042 (2015). And so respondeat superior cannot form the basis of liability. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005). Thus, a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

The Third Circuit has "recognized that 'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

"Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) (footnote omitted), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

To set forth a claim for supervisory liability under the policy and practice strand of supervisory liability, an inmate must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to

the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id*.

Throughout his complaint, Coutinho-Silva does not allege any facts that connect the defendant, Director Ramirez, with the incident; instead, he imputes his sufferings only to the "food services," which supplied him and other inmates with the allegedly contaminated food. *See Doc. 1* at 3, 5 and 16. Without any mention of Director Ramirez's personal involvement, Coutinho-Silva's complaint fails to state a *Bivens* claim upon which relief can be granted. We therefore recommend that Coutinho-Silva's complaint be dismissed.

## C. Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). Here, we cannot say that amendment would be inequitable or futile in this case. Thus, we will recommend that the Court grant Coutinho-Silva leave to file an amended complaint. We note, however, that although we recommend that the motion to dismiss not be granted on the basis of his failure to exhaust administrative remedies, Coutinho-Silva must have exhausted available administrative remedies before filing this lawsuit. *Small v. Lanigan*, 656 F. App'x 586, 588 (3d Cir. 2016).

Coutinho-Silva should take this into consideration when deciding whether to file

an amended complaint.


## V.  Recommendations.

Accordingly, we recommend that the Court grant the defendant's motion

(*doc.12*) to dismiss the complaint.  We further recommend that the Court grant

Coutinho-Silva leave to file an amended complaint to state a claim upon which

relief can be granted.[5]

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within
fourteen (14) days after being served with a copy thereof.  Such party
shall file with the clerk of court, and serve on the magistrate judge and
all parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to
which objection is made and the basis for such objections.  The
briefing requirements set forth in Local Rule 72.2 shall apply.  A
judge shall make a de novo determination of those portions of the
report or specified proposed findings or recommendations to which

---

[5]  Any amended complaint must be titled as an amended complaint and must
contain the docket number of this case.  Any amended complaint must be complete
in all respects; it must be a new pleading which stands by itself as an adequate
complaint without reference to the complaint already filed.  Any amended
complaint will completely replace the original complaint.  If an amended
complaint is filed, the original complaint will have no role in the future litigation of
this case.  Any amended complaint must also comply with the pleading
requirements of the Federal Rules of Civil Procedure.

objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **2nd day of November, 2017**.

***<u>S/Susan E. Schwab</u>***
Susan E. Schwab
Chief United States Magistrate Judge
